# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MAURICE BROWN, KENITH RODGERS, )
KEITH RODGERS, KAYWAN PALMER, )
and BYRON JACKSON, on behalf of )
themselves and all others similarly situated, )
 )
   Plaintiffs, )   No. 12-cv-5710
 )
   v. )   Hon. Robert M. Dow Jr.
 )
CLUB ASSIST ROAD SERVICE U.S., )
INC., )
   Defendant.

## RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

## TABLE OF CONTENTS

Page

I.   **INTRODUCTION** ..........................................................................................1

II.  **BACKGROUND** ............................................................................................2

    A.   **M-CATT LLC** ......................................................................................2

    B.   **R&T Road Service LLC** ....................................................................4

    C.   **2Browns LLC** .....................................................................................5

    D.   **KDP Auto Repair & Emergency Roadside Service LLC** ..................6

    E.   **R&R Auto Roadside Service LLC** .....................................................7

    F.   **Rodgers Emergency Roadside Assistance, Inc.** ................................7

    G.   **Rapid Road Service, Inc.** ..................................................................8

    H.   **Jackson 24-7 Road Service, Inc.** ......................................................8

III. **ARGUMENT** .................................................................................................9

    A.   **The Same Standard Applies To Motions For Collective Action Under Section 216(b) And Class Actions Under Rule 23 And Certification Is Inappropriate Where Common Damages Or Liability Determinations Cannot Be Made** .........................................9

    B.   **Liability In This Case Turns On The Resolution Of Individualized Issues** ............................................................................11

    C.   **Damages In This Case Will Require Individualized Determinations** ............13

    D.   **Courts Routinely Deny Conditional Certification Motions Where, As Here, Plaintiffs Claim They Were Misclassified As Independent Contractors** ........................................................................14

    E.   **Certification Is Not Warranted Because Plaintiffs Are Not Similarly Situated to the Class They Seek to Represent** ...................................17

    F.   **A Conflict Of Interest Between The Named Plaintiffs (And Their Counsel) And Putative Plaintiffs Prevents Certification** ..................22

    G.   **Certification Is Not Warranted Here** .............................................24

**H.** **Proposed Notice Should Be Denied as Premature** ..................................25

**IV.** **CONCLUSION** ..................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Adair v. Wisconsin Bell, Inc.*
    No. 08-C-2008, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008)......... 17, 18, 19

*Andel v. Patterson-UTI Drilling Co.*
    280 F.R.D. 287 (S.D. Tex. 2012)................................................................ 14, 15

*Andrews v. Kowa Printing Corp.*
    838 N.E.2d 894 (Ill. 2005) ........................................................................ 12

*Avritt v. Reliastar Life Ins. Co.*
    615 F.3d 1023 (8th Cir. 2010) .................................................................. 10

*Bamgbose v. Delta T Group, Inc.*
    684 F. Supp.2d 660 (E.D. Pa. 2010) ......................................................... 14

*Bedoya v. Aventura Limousine & Transp. Serv., Inc.*
    No. 11-24432-CIV, 2012 WL 193353 (S.D. Fla. April 10, 2012)............... 14, 16

*Bernard v. Household Int'l, Inc.*
    231 F.Supp.2d 433 (E.D. Va. 2002) ......................................................... 17, 20

*Briggs v. U.S.*
    54 Fed. Cl. 207, 2002 U.S. Claims (Ct. Claims Nov. 4, 2002) ................... 20

*Burns v. Village of Wauconda*
    1999 U.S. Dist. LEXIS 11230, No. 99 C 0800 (N.D. Ill. July 14, 1999)...................... 20

*Demauro v. Limo, Inc.*
    No. 8:10-CV-413-T-33AEP, 2011 WL 9191 (M.D. Fla. Jan. 3, 2011)...................... 14, 16

*Espenscheid v. Directsat USA, LLC,*
    2013 WL 407446 (7th Cir. Feb. 4, 2013) ................................................ 9, 13, 24

*Flores v. Lifeway Foods, Inc.*
    289 F.Supp. 2d 1042 (N.D. Ill. 2003) ...................................................... 18

*Freeman v. Wal-Mart Stores, Inc.*
    256 F.Supp.2d 941 (W.D. Ark. 2003)....................................................... 17, 20

*Gatto v. Mortgage Specialists of Illinois, Inc.*
    442 F.Supp.2d 529 (N.D. Ill. 2006) ................................................................ 18

*Harrison v. McDonald's Corp.*,
    411 F. Supp. 2d 862 (S.D. Ohio Sept. 2, 2005) ............................................. 18

*In re FedEx Ground*
    283 F.R.D. 427 (N.D. Ind. 2012) ................................................................... 16

*In re FedEx Ground Package Sys. Inc., Employment Practices Litig.*
    662 F. Supp. 2d 1069 (N.D. Ind. 2009) .................................................... 14, 16

*Jonites v. Exelon Corp.*
    522 F.3d 721 (7th Cir. 2008) ......................................................................... 21

*Lance v. The Scotts Company*
    Case No. 04-5270, 2005 U.S. Dist. LEXIS 14949 (N.D. Ill. July 21, 2005) .............. 20

*Layton v. DHL Express (USA), Inc.*
    686 F.3d 1172 (11th Cir. 2012) ..................................................................... 12

*Levinson v. Primedia Inc.*
    2003 U.S. Dist. LEXIS 20010, No. 02 Civ. 2222 (S.D.N.Y. Nov. 6, 2003) ................ 20

*Luiken v. Domino's Pizza, LLC*
    2013 WL 399248 (8th Cir. Feb. 4, 2013) ....................................................... 10

*McElmurry v. U.S. Bank Nat'l Ass'n*
    2004 U.S. Dist. LEXIS 15233 (D. Or. July 27, 2004) ..................................... 18

*Moldenhauer v. Tazewell-Pekin Consolidated Comm. Center*
    536 F.3d 640 (7th Cir. 2008) ................................................... 12, 13, 19, 24

*Molina v. First Line Solutions LLC*
    566 F.Supp.2d 770 (N.D.Ill. 2007) ............................................................... 17

*Moreau v. Air France*
    356 F.3d 942 (9th Cir. 2004) ......................................................................... 12

*Nehmelman v. Penn Nat'l Gaming, Inc.*
    822 F.Supp.2d 745 (N.D.Ill. 2011) ............................................................... 17

*Nogueda v. Granite Masters, Inc.*
    2010 WL 1521296 (N.D. Ind. April 14, 2010) ............................................. 18

*Pfaahler v. Consultants for Architects, Inc.*
    No. 99-C-6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000) ......................... 14, 15

*Ramos v. Burger King Corp.*
  No. 8:11-cv-642-T-30MAP, 2011 WL 4634024 (M.D. Fla. Oct. 6, 2011) ...................... 18

*Randall v. Rolls-Royce Corp.*
  637 F.3d 818 (7th Cir. 2011) .................................................................................. 22, 23

*Rappaport v. Embarq Mgmt. Co.,*
  No. 6:07-cv-468-ORl-19DAB, 2007 WL 4482581 (M.D. Fla. Dec. 18, 2007) .............. 18

*Richards v. Comp. Scis. Corp.*
  2004 U.S. Dist. LEXIS 19637 (D. Conn. Sept. 28, 2004) ............................................. 19

*Rutherford Food Corp. v. McComb*
  331 U.S. 722 (1947).................................................................................................... 14

*Secretary of Labor, U. S. Department of Labor v. Lauritzen*
  835 F.2d 1529 (7th Cir. 1987) ............................................................................ 12, 13, 24

*Smilie v. Comcast Corp.*
  No. 07-CV-3231 (N.D. Ill. February 25, 2009) ............................................................. 12

*Wal-Mart Stores v. Dukes*
  131 S.Ct. 2541 (2011)................................................................................................... 10

## Other Authorities

29 U.S.C. § 206(a) ................................................................................................................ 15

29 U.S.C. § 207(a) ................................................................................................................ 15

29 U.S.C. § 216(b)................................................................................................................. 21

## Rules

Fed. R. Evid. 602 .................................................................................................................. 22

Defendant Club Assist Road Service U.S., Inc. ("Club Assist"), by its undersigned attorneys, respectfully submits this response in opposition to the motion for conditional certification filed by Maurice Brown, Kenith Rodgers, Keith Rodgers, Kaywan Palmer, and Byron Jackson ("Plaintiffs").[1]

## I.    **INTRODUCTION**

Recently, the Seventh Circuit held that the same standard should be utilized by a district court when considering whether to certify a collective action under the Fair Labor Standards Act ("FLSA") or a class action under Rule 23. Under that standard, a trial court should deny certification if variances will lead to different answers on either liability or damage determinations, thus making resolution on a uniform basis impractical.

Such factual variances exist in this case. To determine liability, this Court needs to utilize the multi-factor tests relating to the joint employer analysis (Club Assist's view) or independent contractor/employee analysis (Plaintiffs' view). Either approach requires a highly individualized, fact-intensive analysis for liability determinations.

Similarly, there is no simple or formulaic way of determining damages. Sorting out who is entitled to what amount, if any, will require individualized inquiries and testimony. Plaintiffs have not identified how such divergent facts can result in a class determination that protects the due process rights of Club Assist and the individual interests of class members.

Because of these variable liability and damages issues, courts routinely deny FLSA collective certification where plaintiffs allege they were misclassified as independent contractors rather than employees. Moreover, a further complication in this case is the inherent conflicts

---

[1]    Pursuant to the Court's February 19, 2013 order, Club Assist is only addressing Plaintiffs' motion for conditional certification under the FLSA in this response and reserves the right to file a response to Plaintiffs' motion for Rule 23 class certification at a later date. DKT 36.

between the named Plaintiffs (and their counsel) and many of the individuals they seek to represent (who will have a claim against the Plaintiffs for any alleged FLSA violation). Given these factors, Club Assist respectfully requests that this Court deny certification.

## II.    BACKGROUND

Club Assist contracts with local businesses, referred to as service delivery companies ("SDCs), to provide roadside assistance and services to AAA members. DKT 26, Ex. A and B thereto; DKT 34, Ex. A-1, B-1 and D-1 thereto; Ex. A and B hereto. Plaintiffs are employed by five different SDCs. The business operations and circumstances relating to each SDC vary. Likewise, the work schedules for the drivers of each SDC differ and depend on multiple variables. The amount that each SDC pays its drivers likewise varies. The SDCs are paid on a piece rate basis and can achieve incentive compensation if they meet certain factors. Their profit or loss differs and depends on multiple factors.    The SDCs investment in equipment, employment of drivers, and supervision of drivers differ. Moreover, the agreements entered into between the SDCs and Club Assist vary. *Compare* DKT 34, Ex. A-1; Ex. A and B hereto.

### A.    M-CATT LLC

For example, M-CATT LLC ("M-CATT") is an Ohio limited liability company, whose owner and managing member is Tracey Hodges-Canaztuj. Ex. C at ¶¶ 3-6.   It is a service provider to multiple business entities and has entered into service agreements with Empire Today LLC, AmeriBanc National, the Plain Dealer Publishing Company and Club Assist. *Id.* Pursuant to its agreement with Club Assist, M-CATT provides light duty emergency roadside services for AAA members. *Id.*

Ms. Hodges-Canaztuj is solely in charge of making decisions relating to the operations of M-CATT. She describes her role as follows:

I decide how to manage M-CATT's light duty vehicle, including when to pull it off the road for maintenance or based on unsafe conditions. I decide when and how M-CATT's drivers are paid, what deductions need to be made from their pay and whether to grant their requests for time off. Further, I decide when and how to schedule M-CATT's drivers to ensure that M-CATT meets its obligations under its agreement with Club Assist. Club Assist does not have any input in the management and administrative decisions for M-CATT. Club Assist does not have any input in how and when M-CATT schedules its drivers. For better or worse, decisions affecting M-CATT are made solely by me.

Ex. C at ¶ 8.

Ms. Hodges-Canaztuj does not personally drive a vehicle for M-CATT and is solely responsible for its management and operations. *Id.* at ¶ 10. M-CATT operates one vehicle and contracts with between two to four drivers to provide services. *Id.* at ¶¶ 6, 9. It maintains automotive and liability insurance and its own bank account from which it pays its drivers and insurance premiums. *Id.* at ¶ 11, 13. It also retains an accountant to handle its finances and file its tax returns. *Id.* at ¶ 14. M-CATT has its own business policies in place which apply to its drivers and maintains records relating to its business operations. *Id.* at ¶¶ 15-16.

As the owner and managing member of M-CATT, Ms. Hodges-Canaztuj is responsible for the hiring, firing and discipline of M-CATT's drivers. *Id.* at ¶¶ 17-19. Club Assist does not have any input with respect to those decisions. *Id.* She also is responsible for scheduling the hours that M-CATT's drivers are on the road. *Id.* at ¶ 20. M-CATT has contracted with Club Assist to provide emergency roadside assistance from 6:00 A.M. to 11:00 P.M. Monday through Sunday. It is her responsibility to ensure that M-CATT has enough drivers scheduled so that its truck is available during that time. "To meet this obligation, M-CATT has contracted with multiple drivers and split this time period into shifts. From week to week, M-CATT's schedule will vary depending on the availability of its drivers and the shifts they request. Club Assist has no role in scheduling the hours of work for M-CATT's drivers." *Id.*

Ms. Hodges-Canaztuj supervises the daily operations of M-CATT and services provided by its drivers. *Id.* at ¶¶ 21-22. She has discretion to determine whether M-CATT will refuse a call from AAA. *Id.* at ¶ 23. She also determines when and how much M-CATT will pay its drivers. *Id.* at ¶ 24. "Club Assist does not instruct M-CATT what to pay its drivers, how to pay them, or when to pay them. It is completely up to M-CATT how it compensates its drivers." *Id.*

**B.    R&T Road Service LLC**

R&T Road Service LLC ("R&T") is an Ohio limited liability company that entered into an agreement with Club Assist to provide light duty emergency roadside service for AAA members. Ex. D, E at ¶¶ 4, 6. Tanya Baker is R&T's president and Roshon Stewart is its vice president and shop manager. *Id.* at ¶ 7. To conduct its business, R&T leases garage space where it keeps its trucks when they are not in use. *Id.* at ¶ 8. In addition to its contract with Club Assist, R&T also entered into agreements with other companies including loans for two of its trucks and a lease for its other truck. *Id.*

On a daily basis, Tanya Baker and Roshon Stewart share the responsibility of making management and administrative decisions for R&T. *Id.* at ¶ 8. Mr. Stewart is responsible for the daily supervision of R&T drivers, controlling R&T drivers during their shifts and setting their work rules. *Id.* Ms. Baker is responsible for scheduling R&T drivers to work on specific days. *Id.* Mr. Stewart also drives one of R&T's trucks. *Id.* Ms. Baker does not. *Id.*

R&T currently operates three service delivery trucks and employs nine drivers, including Mr. Stewart, and Ms. Baker who works in the office. *Id.* at ¶ 9. R&T recently purchased two brand new 2012 Toyota Tacoma trucks and financed those purchases through a car loan from Toyota Financial Services. *Id.* at ¶ 12. R&T leases a third truck from Bush Truck Leasing. *Id.*

4

R&T maintains automotive and liability insurance in its own name, maintains business records, retains an accountant to handle its finances, and has bank accounts from which it pays its drivers, taxes, insurance premiums and other business expenses. *Id.* at ¶¶ 11, 13-15.

Ms. Baker and Mr. Stewart share the responsibility of hiring, firing and disciplining R&T drivers. *Id.* at ¶¶ 16-19. They also are responsible for scheduling R&T drivers to work on specific days and during specific shifts. *Id.* at ¶ 20. In addition to setting the work hours, R&T also enforces several employment related policies to ensure that its drivers are providing the best service possible. *Id.* at ¶ 21. Mr. Stewart is responsible for supervising the day-to-day operations of R&T and the services provided by its drivers. *Id.* at ¶¶ 22-23. R&T employs each of its drivers. *Id.* at ¶ 24. R&T retained the services of Paychex, Inc. to issue paychecks to R&T employees and make all necessary deductions from those paychecks. *Id.* Club Assist has no input or involvement in setting the wages or compensation of R&T's employees. *Id.* Ms. Baker and Mr. Stewart "strive to run a productive and efficient business and Club Assist does not involve itself in the day-to-day management and administration of R&T." *Id.* at ¶ 25.

## C.    2Browns LLC

In 2009, Club Assist contracted with 2Browns LLC ("2Browns") to provide roadside assistance and services to AAA members. DKT 26 at Ex. A. Club Assist and 2Browns renewed their agreement in July 2011. DKT 26 ¶ 32; Ex. B thereto. 2Browns is an Illinois limited liability company that employed, among others, Plaintiff Maurice Brown. DKT 26, Ex. B at 59. In his declaration, Mr. Brown fails to allege the hours he worked for or the pay he received from 2Browns. DKT 34, Ex. A.

From July 1, 2011 through June 30, 2012, 2Browns used at least eleven different drivers including Maurice Brown. Declaration of Rodney Walbancke, attached hereto as Exhibit F, at ¶

5(a). The schedule for each driver varied from week to week. *Id.* For example, the daily technician log sheets submitted by 2Browns show that Maurice Brown was on-call to provide services as follows during the calendar weeks in April and May 2012: April 1 (24.5 hours); April 8 (21.5 hours); April 15 (23 hours); April 22 (24 hours); April 29 (27.5 hours); May 6 (6 hours); May 13 (20 hours); May 20 (21 hours); and May 27 (11 hours). *Id.* For April and May 2012, Club Assist paid 2Browns net amounts of $5,460.82 and $5,951.76. *Id.* From July 1, 2011 through June 30, 2012, Club Assist paid 2Browns a net amount of $67,224.17 in accordance with its service delivery agreement with 2Browns. *Id.*

### D.   KDP Auto Repair & Emergency Roadside Service LLC

Club Assist entered into a service delivery agreement with KDP Auto Repair & Emergency Roadside Service LLC ("KDP") in approximately December 2010. KDP is an Illinois limited liability company that employs, among others, Plaintiff Kaywan Palmer. Mr. Palmer did not submit a declaration in support of the motion for certification. Pursuant to the service delivery agreement, Club Assist paid KDP the net amounts of $80,131.80 and $68,925.90 for the years 2011 and 2012, respectively. Ex. F at ¶ 5(b).

In December 2012, KDP renewed its agreement with Club Assist and Kaywan Palmer again signed an acknowledgement that KDP was his employer. Ex. A hereto. The agreement provides that, subject to the terms and conditions of the agreement:

> The manner and means by which the SDC performs the Services shall be at the SDC's sole discretion and control and are the SDC's sole responsibility, including without limitation: (a) the hours and days worked by the SDPs; and (b) the number, selection and supervision of the SDPs. The SDC shall have the sole right to determine all aspects of its performance of its obligations under this Agreement, including the staffing and operation of its Delivery Vehicle when providing Services.

Ex. A at § 2.5.

The agreement further provides:

6

The SDC shall be solely responsible for the interviewing, hiring, training, disciplining and termination of the SDPs and shall in all circumstances make clear to each SDP that such SDP is not an employee of [Club Assist] and does not have any contractual relationship with [Club Assist]. The SDC shall be solely responsible for providing any compensation or other benefits to each SDP (and for the timely and accurate payment thereof) and for any insurance or other taxes.

*Id.* at § 12.7.

KDP also agreed to treat all of its drivers as employees and to comply at its own expense with all federal, state and local laws that apply to employers including:

*Wage and hour laws*, including, without limitation, the [FLSA] and all state laws and regulations that require employers to keep accurate records of hours worked by and wages paid to employees, pay employees a minimum hourly wage, provide overtime pay to employees who work more than 40 hours per workweek, pay employees' wages within a specified time after such wages have been earned, and any laws or regulations that require employers to notify employees of their rights under such laws

*Id.* at §§ 12.1, 20.1 and 20.2(ii)(B).

### E.   R&R Auto Roadside Service LLC

In July 2012, Club Assist entered into a service delivery agreement with R&R Auto Roadside Service LLC ("R&R"). Ex. B hereto. R&R is a Pennsylvania limited liability company that employs Rushdi Rashid. Mr. Rashid is one of the declarants. In his declaration, however, Mr. Rashid fails to allege the hours he worked for R&R or the pay he received from it. DKT 34, Ex. C. Pursuant to the service delivery agreement, Club Assist paid the following net monthly amounts to R&R in 2012 and 2013: $5,066.62 (July); $6,274.44 (August); $5,150.48 (September); $5,310.55 (October); $7,893.69 (November); $7,805.82 (December); and $8,006.90 (January 2013). Ex. F at ¶ 5(c).

### F.   Rodgers Emergency Roadside Assistance, Inc.

Club Assist entered into a service delivery agreement with Rodgers Emergency Roadside Assistance, Inc. ("Rodgers Emergency Roadside Assistance") in approximately May 2011. DKT

7

34, Ex. D-1. Rodgers Emergency Roadside Assistance is an Illinois corporation that employs, among others, Plaintiff Kenith Rodgers. In his declaration, Kenith Rodgers fails to allege the hours he worked for or the pay he received from Rodgers Emergency Roadside Assistance. DKT 34, Ex. D. Pursuant to the service delivery agreement, Club Assist paid Rodgers Emergency Roadside Assistance the net amount of $48,363.18 for the time period from May through December 2011. Ex. F at ¶ 5(d).

G. **Rapid Road Service, Inc.**

Club Assist entered into a service delivery agreement with Rapid Road Service, Inc. ("Rapid Road Service") in approximately July 2011. Rapid Road Service is an Illinois corporation that employs, among others, Plaintiff Keith Rodgers. Keith Rodgers did not submit a declaration in support of the motion for certification. Pursuant to the service delivery agreement, Club Assist paid Rapid Road Service the net amounts of $52,153.82 and $70,928.67 for the time period from July through December 2011 and January to December 2012, respectively. Ex. F at ¶ 5(e).

H. **Jackson 24-7 Road Service, Inc.**

Club Assist entered into service delivery agreements with Jackson 24-7 Road Service, Inc. ("Jackson 24-7") in 2009 and again in July 2011 (DKT 34 at Ex. B-1). Jackson 24-7 is an Illinois corporation that employs, among others, Plaintiff Byron Jackson. In his declaration, Mr. Jackson fails to allege the hours he worked for or the pay he received from Jackson 24-7. DKT 34, Ex. B. Pursuant to the service delivery agreements, Club Assist paid Jackson 24-7 the net amounts of $79,574.50, $67,654.97 and $56,311.83 for the years 2010 to 2012, respectively. Ex. F at ¶ 5(f).

### III.  ARGUMENT

**A.  The Same Standard Applies To Motions For Collective Action Under Section 216(b) And Class Actions Under Rule 23 And Certification Is Inappropriate Where Common Damages Or Liability Determinations Cannot Be Made**

Recently, the Seventh Circuit held that the same standard should be utilized by a district court when considering whether to certify a collective action under the FLSA or a class action under Rule 23. *Espenscheid v. Directsat USA, LLC*, 2013 WL 407446, at *1 (7th Cir. Feb. 4, 2013) (stating that "there isn't a good reason to have different standards for the certification of two different types of action, and the case law has largely merged the standards, though with some terminology differences"). The Seventh Circuit affirmed an order decertifying a class/collective action asserting wage and hour claims and held that, even if a common liability determination can be made, divergent experiences as to damages also can render class certification inappropriate. *Id.* at *2-5. The court emphasized that certification requires that plaintiffs have a specific plan in place that will allow for the presentation of "representative" evidence that can resolve the relevant issues for all class members on a uniform basis. *Id.* (noting plaintiffs have the burden of presenting a method that "enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked").

In *Espenscheid*, 2013 WL 407446, at *2, the class consisted of 2,341 technicians employed by DirectSat to install and repair home satellite dishes. Those technicians spent their work days installing and repairing satellite equipment at customers' homes and were paid on a piece rate basis rather than a fixed hourly rate. The Seventh Circuit affirmed the decertification because "to determine damages, it turns out, require[d] 2341 separate evidentiary hearings." *Id.* The court noted that it was not as if each technician worked a set schedule and a damage calculation was effortless and mechanical. *Id.* The damage calculation was further complicated by the piece-rate system:

That's just the beginning of the difficulty of computing damages of each class member. Consider the complication created by the piece-rate system. When one is paid by the job rather than by the hour, the hourly wage varies from job to job and worker to worker. Suppose the same job, for which the piece rate is $500, is completed by one worker in 30 hours (and it is the only job he does that week) and by another in 60 hours (also in a week). The hourly wage of the first worker, $16.67, will be well above the minimum wage, and he has no overtime either, he has no damages. The hourly wage of the second worker, $8.33, is also above the minimum wage, but he is entitled to 1.5 times that amount for 20 of his 60 hours and thus a total wage of $583.10 (($8.33 x 40) + ($8.33 x 1.5 x 20)), making his damages $83.10 if DirectSat paid him only $500 for the job.

*Id.* at \*3. "[W]hat can't support an inference about the work time of thousands of workers is evidence of the experience of a small, unrepresentative sample of them." *Id.* at \*4.

In *Luiken v. Domino's Pizza, LLC*, 2013 WL 399248 (8th Cir. Feb. 4, 2013), the Eighth Circuit reversed a certification order because "varied circumstances" between class members prevented a "one stroke determination" of the liability issue. *See also Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (noting "[w]hat matters to class certification ... is not the raising of common 'questions' — even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.")(emphasis in original). Domino's identified a summary of differences in delivery transactions that made class treatment impracticable. The Eight Circuit held "[u]nder *Dukes*, the district court here erred in finding commonality, because the varied circumstances of deliveries prevent a 'one stroke' determination." *Luiken*, 2013 WL 399248, at \*5. *See also Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1030-31 (8th Cir. 2010) (concluding that common evidence could not establish liability for the class because defendant "would be entitled to introduce evidence about how the contract was explained in various sales discussions and whether each purchaser's understanding of the contract was consistent with the theory [plaintiffs] now advance").

### B.   Liability In This Case Turns On The Resolution Of Individualized Issues

Plaintiffs assert a claim for overtime and minimum wage under FLSA Sections 206 and 207. A minimum wage violation occurs when an employee is paid at a rate below the minimum wage rate, 29 U.S.C. § 206(a), and an overtime violation occurs when an employer fails to pay overtime to an employee who works more than 40 hours per week. 29 U.S.C. § 207(a).

There is a clear distinction between (1) an hourly employee who is paid directly as an independent contractor but who is otherwise treated as an employee; and (2) a separate corporate entity that contracts to perform services and then hires individuals whose performance, hours, and pay it controls. Club Assist entered into agreements with various SDCs to provide roadside services and paid those companies specified contract amounts. There is no allegation that Club Assist breached those agreements.

The SDCs had a multitude of drivers, and the SDCs (not Club Assist) determined what, when, and how their drivers were paid, what schedule they worked, and the number of hours each driver worked. Noticeably absent from the Plaintiffs' declarations are any allegation that the payments by SDCs to their drivers were below minimum wage or failed to satisfy overtime obligations. The declarations do not even set forth the hours that the SDCs required them to work, the amount the SDCs paid them, or whether the SDCs paid overtime. In the absence of such essential facts, the declarants fail to state a viable FLSA claim for themselves, much less for the putative class members.

Plaintiffs appear to allege that Club Assist is their joint employer together with the respective SDC. The Seventh Circuit held that for a "joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee," and noted that relevant, but not exclusive, factors include whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions

11

of payment, (3) determined the rate and method of payment, and (4) maintained employment records. *See Moldenhauer v. Tazewell-Pekin Consolidated Comm. Center*, 536 F.3d 640, 643-45 (7th Cir. 2008). The declarants fail to include facts relating to any of those factors. DKT 34 in its entirety. Plaintiffs do not allege that Club Assist hired and fired SDC employees, supervised and controlled SDC employees' work schedules or conditions of payment, determined the rate and method of payment for SDC employees, or maintained employment records for SDC employees. *Id.* Plaintiffs, therefore, fail to state a claim for joint employment for themselves or the putative class members. *Moldenhauer*, 536 F.3d at 643-45.[2] Even if one or more of the Plaintiffs provided such evidence, there is nothing to suggest that their experience is reflective of other SDCs or drivers. In fact, the owners of M-CATT and R&T verify the opposite is true for them.

In their motion for conditional certification, Plaintiffs cite to the six-factor test from *Secretary of Labor, U. S. Department of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987). DKT 34 at 2. Those factors include (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed, (2) the alleged employee's opportunity for profit or loss depending on his managerial skills, (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers, (4) whether the service rendered requires a special skill, (5) the degree of permanency and duration of the working relationship, and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *Lauritzen*, 835 F.2d at 1534-35. Plaintiffs note, however, that "[t]he courts do not consider one criterion by itself, or its absence, to be 'dispositive or

---

[2] *See also Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012) (holding that no joint employer relationship existed between DHL and drivers employed by contractor to deliver packages); *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2004) (finding no joint employer relationship); *Smilie v. Comcast Corp.*, No. 07-CV-3231 (N.D. Ill. February 25, 2009), attached as Exhibit A to DKT 33, (finding no joint employer relationship); *Andrews v. Kowa Printing Corp.*, 838 N.E.2d 894, 904 (Ill. 2005).

controlling,' but instead look at the totality of the factors." DKT 34 at 2 (citing *Lauritzen*, 835 F.2d at 1534). Plaintiffs' declarations fail to include sufficient facts to show that any of those factors weigh in their favor. DKT 34, Exhibits A-D. The service delivery agreements, as well as the declarations, make clear that the SDCs had an opportunity for profit or loss based on their managerial skills and that they invested in equipment and materials. *See* DKT 26, Ex. B and DKT 34, Exhibits A, A-1, B, B-1, C, D, and D-1. The declarations from other SDC owners show that the respective SDC controlled the number of workers they employed, their schedules, their pay and their supervision. Exhibits C, D and E hereto.

Regardless of whether the *Moldenhauer* or *Lauritzen* factors apply, however, Plaintiffs fail to explain how the resolution of those issues can be accomplished in "one stroke determination" of liability. Rather, an examination of the totality of the circumstances relating to either determination requires a fact-intensive, individual analysis. Such individualized analysis makes class treatment inappropriate. *See infra* Section D.

C. **Damages In This Case Will Require Individualized Determinations**

As with liability, there is no simple or formulaic way of determining damages in this case. Sorting out who is entitled to what amount, if any, will require individualized inquiries and testimony. The SDCs are paid based on services provided (*e.g.*, on a piece rate basis) and can achieve performance enhancements and incentives in addition to those base contract amounts. Similarly, the amount that each SDC pays its drivers and the hours each driver works per week varies and is determined by each SDC. SDCs (not Club Assist) are charged with maintaining records of these matters. Given those variances, each driver's damage claim would require a separate evidentiary hearing making class treatment impracticable. *Espenscheid*, 2013 WL 407446, at *2-3.

For example, during April and May 2012, 2Browns' daily logs show that Mr. Brown was

on call for a total of 178.5 hours and never more than 27.5 hours in any given week. The minimum wage in Illinois was $8.25 entitling him to $1,472.63 ($8.25 x 178.5) at minimum wage for those months. For April and May 2012, Club Assist paid 2Browns a total net amount of $11,358.58. 2Browns, therefore, received ample amounts to pay Mr. Brown minimum wage. If it failed to do so, Mr. Brown should address that claim with 2Browns.

**D.     Courts Routinely Deny Conditional Certification Motions Where, As Here, Plaintiffs Claim They Were Misclassified As Independent Contractors**

Courts routinely deny collective certification of FLSA actions where plaintiffs allege they were misclassified as independent contractors rather than employees. *See Pfaahler v. Consultants for Architects, Inc.*, No. 99-C-6700, 2000 WL 198888, at *3 (N.D. Ill. Feb. 8, 2000); *Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287, 290 (S.D. Tex. 2012); *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011); *Bamgbose v. Delta T Group, Inc.*, 684 F. Supp.2d 660, 669 (E.D. Pa. 2010) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947), and noting that the "Supreme Court has held that courts are to look to the 'circumstances of the whole activity' to determine whether an employment relationship exists"); *Bedoya v. Aventura Limousine & Transp. Serv., Inc.*, No. 11-24432-CIV, 2012 WL 193353, at *5 (S.D. Fla. April 10, 2012); *In re FedEx Ground Package Sys. Inc., Employment Practices Litig.*, 662 F. Supp. 2d 1069, 1083 (N.D. Ind. 2009) (applying economic realities test and noting that "the court must take into consideration the actual history of the parties' relationship, necessitating an individualized examination of the multiple factors relating to each driver's employment. Because the evidence pertaining to such factors varies in material respects throughout the proposed class, there is a lack of substantial similarity among the putative class members sufficient to justify treatment as a collective action").

In *Pfaahler*, 2000 WL 198888 at *2-3, the plaintiff alleged that he was misclassified as an independent contractor and sought certification of a collective action. The District Court for the Northern District of Illinois denied certification noting that "[i]n order to determine who is an independent contractor and who is an employee, the court would be required to make a fact-intensive, individual determination as to the nature of each potential claimant's employment relationship with [the defendant]." *Id.* "Where this is the case, certification of a collective action under the FLSA is inappropriate." *Id.* The plaintiff also failed to offer admissible evidence establishing that he was similarly situated to the other potential plaintiffs and "the facts that may establish [plaintiff's] status as an employee have no bearing on whether other potential claimants experience similar relationships with [the defendant]." *Id.*

In *Andel*, 280 F.R.D. at 289-90, the District Court for the Southern District of Texas denied conditional certification for welders claiming they were misclassified as independent contractors. A court must look beyond a defendant's uniform classification and must analyze whether the putative plaintiffs are "similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors." *Id.* "Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate the economy of scale envisioned by the FLSA collective action procedure." *Id.* (citations omitted). In *Andel*, "[t]he proof necessary to determine whether putative plaintiffs [were] employees or independent contractors [could not] be applied to the class as a whole." *Id.* The court noted significant variances in the hours worked, the relative investments and the ability to control profits or losses. *Id.* The court would need to "conduct an individualized analysis of each putative plaintiff before it could be satisfied that each one fell

under the auspices of the FLSA" and "such individualized analysis would contravene a primary purpose behind class action lawsuits, *i.e.*, promotion of judicial economy." *Id.*

In *Demauro*, 2011 WL 9191 at *1, plaintiffs, sedan drivers, sought a collective action consisting of all "owner/operator drivers employed by Defendants as independent contractors throughout the United States . . ." The District Court for the Middle District of Florida noted that the "economic realities test is fact intensive and requires individualized analysis" and that a number of courts determined that the independent contractor/employee analysis "is not appropriate for determination on a class-wide basis." *Id.* at *3. The court denied conditional certification holding that "each individual who may seek to join this case will be examined separately in order to determine whether such individual is an employee or an independent contractor. This necessarily individualized assessment eviscerates all notions of judicial economy that would otherwise be served by conditional class certification." *Id.* at *4. *See also Bedoya*, 2012 WL 193353, at *5 (denying conditional certification of drivers who claimed that they were misclassified as independent contractors); *In re FedEx Ground*, 662 F. Supp. 2d at 1083 (same); *In re FedEx Ground*, 283 F.R.D. 427, 489-90 (N.D. Ind. 2012) (noting that "Illinois law seems to contemplate that even when the 'employment' agreement vests enough control in the hiring party to create an employment relationship, the inquiry still must extend to the parties' extracontractual relationship" and "Illinois law poses questions upon which FedEx Ground must be allowed to present driver-by-driver evidence. When the inquiry broadens beyond whether the right to control is established in the FedEx Ground Operating Agreement, analysis under Illinois law might deem some, but not all, drivers to be employees.")

Here, as in the cases referenced above, Plaintiffs' allegations that they were misclassified as independent contractors rather than employees requires fact-intensive, individualized determinations that render this lawsuit inappropriate for certification.

### E. Certification Is Not Warranted Because Plaintiffs Are Not Similarly Situated to the Class They Seek to Represent

The FLSA requires potential plaintiffs to be "similarly situated" in order to proceed with an FLSA collective action. 29 U.S.C. § 216(b). Plaintiffs bear the burden of showing that they are "similarly situated" to other potential FLSA plaintiffs and that showing "cannot be founded solely on allegations of the complaint; some factual support must be provided." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 750 (N.D.Ill. 2011); *Molina v. First Line Solutions LLC*, 566 F.Supp.2d 770, 786 (N.D.Ill. 2007) (to establish the requisite showing, plaintiffs "must provide an affidavit, declaration, or other support beyond allegations..."). Accordingly, affidavits and other testimony must provide *specific evidence* to support certification and notice. *Bernard v. Household Int'l, Inc.*, 231 F.Supp.2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice; some factual evidence is necessary"); *Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003) ("unsupported allegations of widespread [FLSA] violations are not sufficient" to meet a plaintiff's burden of showing that he or she is similarly situated to the class he or she seeks to represent).

Moreover, conclusory statements contained in declarations are nothing more than mere allegations that do not satisfy the factual showing required for conditional certification and, accordingly, may be disregarded by the court. *See Adair v. Wisconsin Bell, Inc.*, No. 08-C-2008, 2008 U.S. Dist. LEXIS 68942, at *17 (E.D. Wis. Sept. 11, 2008) (denying conditional certification because "conclusory allegations in the plaintiffs' [pleadings] are simply not sufficient"); *Ramos v. Burger King Corp.*, No. 8:11-cv-642-T-30MAP, 2011 WL 4634024, *2

(M.D. Fla. Oct. 6, 2011); *Rappaport v. Embarq Mgmt. Co.*, No. 6:07-cv-468-ORl-19DAB, 2007 WL 4482581, *4 (M.D. Fla. Dec. 18, 2007) (collecting cases). *See also Nogueda v. Granite Masters, Inc.*, 2010 WL 1521296, at *2 (N.D. Ind. April 14, 2010) (denying conditional certification because the plaintiff did not submit any affidavit beyond her own and, accordingly, did not satisfy the "similarly situated" burden); *Flores v. Lifeway Foods, Inc.*, 289 F.Supp. 2d 1042, 1045-46 (N.D. Ill. 2003) (finding that evidence relating to two out of fifty employees without more was insufficient). *Cf. Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp. 2d 529, 535-36 (N.D. Ill. 2006) (finding statement that plaintiff worked more than 40 hours "nearly every week" was conclusory and insufficient to defeat summary judgment).

FLSA plaintiffs must offer admissible evidence in support of FLSA conditional certification. Fed. R. Evid. 602. In particular, Plaintiffs who claim that they are similarly situated to the individuals that they seek to represent must provide evidence, via declaration, that would be admissible under the Federal Rules of Evidence. *Id.* Rule 602 of the Federal Rules of Evidence states: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." *Id.* The comments to Rule 602 of the Federal Rules of Evidence further explain: "[T]he rule requiring that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe, and must have actually observed the fact." *Id.*

Accordingly, declarations submitted in support of motions for FLSA conditional certification must be based on admissible evidence. *Adair*, 2008 U.S. Dist. LEXIS 68942, at *22. *See also Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio Sept. 2, 2005); *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 U.S. Dist. LEXIS 15233, at *28 (D. Or. July 27, 2004); and *Richards v. Comp. Scis. Corp.*, 2004 U.S. Dist. LEXIS 19637, at *3 (D. Conn.

Sept. 28, 2004). The court in *Adair* held that it is particularly important that declarations submitted in support of FLSA class certification be premised on the witnesses' personal knowledge, not upon their conjecture or general awareness, given the substantial financial and litigation burdens imposed upon defending employers. 2008 U.S. Dist. LEXIS 68942 at *22. Therefore, FLSA declarants' statements that are not premised upon personal knowledge and are thus by their nature conclusory, should not considered in determining the appropriateness of conditional class certification. *Id.*

In this case, the affidavits of Plaintiffs Maurice Brown, Byron Jackson, Kenith Rodgers and Rushdi Rashid do nothing more than restate the conclusory allegations from the complaint. DKT 34, Exhibits A-D. The declarants fail to allege the hours they worked for or the pay they received from the SDC that employed them. *Id.* The declarants fail to include facts relating to any of the *Moldenhauer* factors. *Id.* The service delivery agreements, as well as the declarations, make clear that the SDCs had an opportunity for profit or loss based on their managerial skills and that they invested in equipment and materials. *See* DKT 26, Ex. B and DKT 34, Exhibits A-1, B-1 and D-1. The declarations from other SDC owners show that the respective SDC controlled the number of workers it employed, their schedules, their pay and their supervision. Exhibits C, D and E hereto. The declarations submitted by Plaintiff are silent on those issues. In short, Plaintiffs offer no tangible evidence to support any of their allegations, rendering their claims purely speculative and insufficient to satisfy their burden of showing they are similarly situated to other potential FLSA collective action members or that they even have a viable FLSA claim.

Additionally, Plaintiffs "must make a factual showing that extends beyond their own circumstances." *Lance v. The Scotts Company*, Case No. 04-5270, 2005 U.S. Dist. LEXIS

14949, at *27 (N.D. Ill. July 21, 2005) (*citing Levinson v. Primedia Inc.,* 2003 U.S. Dist. LEXIS 20010, No. 02 Civ. 2222 (S.D.N.Y. Nov. 6, 2003)). *See also Burns v. Village of Wauconda,* 1999 U.S. Dist. LEXIS 11230 at *8-9, No. 99 C 0800 (N.D. Ill. July 14, 1999) (denying motion to issue notice to class; broad allegation that defendants violated FLSA overtime provisions on a "general employee-wide basis" was insufficient to trigger notice to all village employees, where village offered an affidavit indicating policy was not applicable outside of public works department); *accord, Bernard,* 231 F.Supp.2d at 435-36 (denying nationwide class certification, citing, among other things, lack of names of employees or supervisors at other locations); *see also Briggs v. U.S.,* 54 Fed. Cl. 207, 2002 U.S. Claims (Ct. Claims Nov. 4, 2002) (denying certification and notice of nationwide census workers' FLSA action -- supporting affidavits offered no specific allegations regarding other census offices, such as "names, dates, places, types of unlawful action, etc."); *Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941, 945 (W.D. Ark. 2003) (employees are not similarly situated just because they claim FLSA violations by the same employer -- FLSA plaintiff must show that his or her job and duties are similar to those of the persons whom he or she seeks to represent). Applying this case law to the present case, Plaintiffs' claim that they are "similarly situated" to other SDC owners or the drivers employed by different SDCs throughout the United States lacks any admissible evidence to support it, and prevents conditional certification.

In support of the similarly situated assertion, the declarations allege only that "[m]y understanding based on conversations with Club Assist representatives is that all Club Assist emergency road services drivers are subject to a similar agreement and work under the auspices of a similar business association." DKT 34, Ex. A at ¶ 12, Ex. B at ¶ 11. Such conclusory, inadmissible statements are simply not enough for Plaintiffs to meet their

burden. As such, Plaintiffs fail to make the requisite showing that they are similarly situated to other SDC owners or the drivers employed by different SDCs throughout the United States they purport to represent.

Defendants, on the other hand, submit evidence attached to this Opposition that demonstrates that the declarants alleged circumstances relating to their relationship with Club Assist are very different than other SDCs and the drivers employed by those SDCs. Exhibits C, D and E. The declarations from other SDC owners show that the respective SDC controlled the number of workers it employed, their schedules, their pay and their supervision. *Id.* Those SDCs were responsible for the hiring, firing and discipline of their respective drivers. *Id.* Those SDC owners also decided whether to purchase their own vehicles or lease them from Bush Truck Leasing and when to pull their vehicles off the road. *Id.*

In *Jonites v. Exelon Corp.*, 522 F.3d 721, 725-26 (7th Cir. 2008), the Seventh Circuit held that the plaintiffs could not meet the FLSA "similarly situated" requirement, stating

> As in *Leahy*, the plaintiff class here is hopelessly heterogeneous. We noted this in discussing the call-out claim; in regard to the mealtime claim, the abuse of the class action device (or "collective action," as class actions under 29 U.S.C. § 216(b)) is even more egregious; the class includes workers who have no conceivable mealtime claim because they do not work the day shift. The plaintiffs and other members of the class, or some of them, may have an FLSA claim that they could press in an individual suit, but the filing of the class action suggest that they have no stomach for proceeding case by case. If they are unwilling to file individual suits, or create homogeneous classes in order to bring proper class actions, then, since an essential condition of maintaining an FLSA class action – that the members of the class be "similarly situated" to one another, 29 U.S.C. § 216(b) – is not satisfied, their only recourse is ask the union to file grievance proceedings under the [CBAs].

*Id.*

Based on the foregoing, it is clear the named Plaintiffs do not satisfy the required factual showing that they are "similarly situated" to other SDC owners or the drivers employed by different SDCs throughout the United States to justify certifying the present class action and issuing notice. *See supra* Section D.

**F.      A Conflict Of Interest Between The Named Plaintiffs (And Their Counsel) And Putative Plaintiffs Prevents Certification**

Adequacy of representation is another requirement for class certification. *See Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). If the named plaintiffs' claims are significantly weaker than other class members or they are subject to unique defenses, the named plaintiffs are not adequate class representatives. *Id.* Moreover, if there is a potential conflict of interest between the named plaintiffs and the unnamed members of the class, the named plaintiffs are not adequate class representatives and class certification should be denied. *Id.*

In *Randall*, plaintiffs claimed that Rolls-Royce engaged in sex discrimination and violated the Equal Pay Act by paying them and putative class members less than comparable male employees. *Id.* at 820. The Seventh Circuit noted that the named plaintiffs had the authority within the company to set the pay rates of both putative class members and male employees. *Id.* at 824. The court held that such authority created a conflict of interest between the plaintiffs and unnamed class members:

> The plaintiffs have the authority within the company with regard to the compensation of some, and maybe many, of the unnamed class members and, as worrisome, over male employees in the same job categories as the class members. Although we doubt that plaintiffs would deliberately depress the salary of female employees who they supervise, or increase the salary of male employees who they supervise, in order to create evidence of discrimination, the possibility of such strategic conduct (which might be unconscious) creates a conflict of interest between the plaintiffs and unnamed members of the class, (as well as with Rolls-Royce, if the plaintiffs raised the salaries of male employees in the class members' compensation categories in order to create evidence of sex discrimination). A class representative's conflict of interest is an independent ground for denial of class certification. There is even evidence that the plaintiffs participated in decisions concerning female employees' compensation that, on their theory of the case, were discriminatory.

*Id.* at 824 (citations omitted).

Here, the conflict of interest is even more apparent. The SDCs owned by Plaintiffs determined what, when, and how their respective drivers were paid, the drivers' schedules, and

22

the number of hours each driver had to work. As in *Randall*, the named plaintiffs' authority to

determine those factors leads to an inherent conflict of interest that defeats class certification.

*Randall*, 637 F.3d at 824. Moreover, as the employer for those drivers, each SDC is liable if it

failed to comply with the FLSA by paying them minimum wage or overtime which leads to yet

another conflict of interest. Given the SDCs' potential liability for claims by their respective

drivers, it is unclear how Plaintiffs and their counsel can adequately and ethically represent the

interests of drivers who, if Plaintiffs' allegations are true, would have FLSA claims against the

their employing SDCs and the Plaintiffs as the primary owners and managers of those SDCs.

In addition, the SDCs owned by plaintiffs, and plaintiffs individually, are liable to Club

Assist for their failure to abide by wage and hour laws with respect to any particular driver. For

example, Rushdi Rashid is the owner of R&R. R&R agreed, among other things, to treat all of

its drivers as employees and to comply at its own expense with all federal, state and local laws

that apply to employers including:

> *Wage and hour laws*, including, without limitation, the [FLSA] and all state laws and
> regulations that require employers to keep accurate records of hours worked by and
> wages paid to employees, pay employees a minimum hourly wage, provide overtime pay
> to employees who work more than 40 hours per workweek, pay employees' wages within
> a specified time after such wages have been earned, and any laws or regulations that
> require employers to notify employees of their rights under such laws

Ex. B at §§ 12.1, 20.1 and 20.2(ii)(B). Pursuant to the service delivery agreement, R&R agreed

to indemnify Club Assist for its breach of any obligation under the agreement. *Id.* at §§ 20, 33.

To the extent that R&R failed to pay its drivers compensation in accordance with the FLSA,

R&R is liable to Club Assist for that amount. Moreover, Rushdi Rashid guaranteed R&R's

payment obligations under the agreement and agreed to indemnify Club Assist for all claims and

damages that Club Assist may suffer or incur as a result of R&R's breach of the service delivery

agreement. Ex. B. Thus, Plaintiffs like Rushdi Rashid (and their counsel) have a direct conflict with the interests of putative plaintiffs who were hired and paid by their relevant SDCs.

### G.     Certification Is Not Warranted Here

Regardless of whether the *Moldenhauer* or *Lauritzen* factors apply, Plaintiffs fail to explain how the resolution of those issues can be accomplished in "one stroke determination" of liability. Rather, an examination of the totality of the circumstances for either determination requires a fact-intensive, individual analysis that makes class treatment inappropriate. Similarly, there is no simple or formulaic way of determining damages, and sorting out who is entitled to what amount, if any, will require individualized inquiries and testimony. Given those variances, each driver's damage claim would require a separate evidentiary hearing making class treatment impracticable. *Espenscheid*, 2013 WL 407446, at *2-3.

Plaintiffs made no effort to address these challenging issues, and offer no tangible evidence to support any of their allegations, rendering their claims purely speculative and insufficient to satisfy their burden of showing they are similarly situated to other potential FLSA collective action members or that they even have a viable FLSA claim. Club Assist, on the other hand, submits evidence demonstrating that the declarants alleged circumstances relating to their relationship with Club Assist are very different than other SDCs and the drivers employed by those SDCs.

In light of these challenges, it should be no surprise that courts routinely deny collective certification of FLSA actions where plaintiffs allege they were misclassified as independent contractors rather than employees. *See* Section D. That result is warranted here, especially in light of the clear conflict of interest that exists between Plaintiffs (who own SDCs) and putative plaintiffs who were worked for and were paid by those SDCs. *See* Section F.

24

**H.     Proposed Notice Should Be Denied as Premature**

As described above, Plaintiffs failed to meet their burden of showing that they are similarly situated to the drivers employed by the various SDCs and, accordingly, this Court should deny conditional certification.  Moreover, the Court should deny Plaintiffs request for approval of their notice because they fail to provide any briefing or argument justifying the proposed form, content, process or timing of the notice.  It would be unfair to allow Plaintiffs to provide such information in their reply when Club Assist would not have an opportunity to respond.  Thus, to the extent that the Court authorizes notice (which it should not), Club Assist respectfully requests an opportunity to meet and confer with Plaintiffs regarding the proposed notice and, if the parties are unable to reach a resolution, the opportunity to brief that issue.  For illustrative purposes only, some of the flaws in the proposed notice include that it does not describe Club Assist's defenses, does not inform the employees they can retain their own counsel, does not mention the pending motion to dismiss, does not explain the conflicts of interest between SDC-owners and other drivers, and does not explain the potential responsibilities and cost-exposure to those who participate in the proceeding.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Club Assist Road Service U.S., Inc. respectfully requests that the Court deny Plaintiffs' motion for conditional certification.

Dated:  March 21, 2013                     CLUB ASSIST ROAD SERVICE U.S., INC.
                                           Defendant,

                                           By:  /s/ John T. Roache
                                                One of Its Attorneys

John T. Roache
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
T: (312) 372-1121
F: (312) 827-8095