IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 12 CV 5710 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CLUB ASSIST ROAD SERVICE U.S., INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER AND OPINION**

Before the Court are Defendant's motion to dismiss and/or strike Plaintiffs' first amended complaint [27] and Plaintiffs' combined motion for conditional certification of a collective action and for class certification [34]. For the reasons stated below, the Court denies the motion to dismiss and grants in part and denies in part the motion to strike [27]. The Court grants in part the motion for conditional certification of a collective action [34]. This matter is set for status at 9:00 a.m. on October 31, 2013. Parties are to submit a status report no later than three days prior to the status.

**I.      Background**

The Court accepts as true all well-pleaded facts alleged by Plaintiffs and all reasonable inferences that can be drawn from them. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

Plaintiffs Maurice Brown, Kenith Rodgers, Keith Rodgers, Kaywan Palmer, and Byron Jackson (collectively "Plaintiffs") are emergency road service drivers. [26] ¶¶ 1, 12. Defendant Club Assist Road Service U.S., Inc., ("Defendant," "Club Assist," or "CA") is a Delaware corporation with its principal place of business in California. It operates in Illinois and is

"exclusively in the business of providing emergency road services to members of the American Automobile Association ('AAA') and other 'Club Assist Partners.'" *Id.* ¶ 13; see also *id.* ¶ 19.

At various times prior to 2009, Defendant hired Plaintiffs Brown and Jackson to drive for it as acknowledged hourly employees. *Id.* ¶ 17. Defendant at those times paid Plaintiffs Brown and Jackson on an hourly basis, with extra compensation for "piece work." *Id.* ¶ 20. During those times, Plaintiffs Brown and Jackson received compensation that was at least equal to the minimum hourly wage and were paid for all hours that they were "on call," that is, "near their trucks and ready on an emergency basis to provide roadside service [to] customers of Club Assist." *Id.* ¶¶ 21-23. Plaintiffs Brown and Jackson generally worked about forty hours per week, including the time they spent "on call," *id.* ¶ 24, and were paid 1.5 times their normal hourly rate for every hour they worked in excess of forty hours per week. *Id.* ¶ 25.

In the summer of 2009, Defendant announced a plan to change the status of its emergency road service drivers, including Plaintiffs Brown and Jackson. *Id.* ¶ 26. Pursuant to this plan, Defendant purported to terminate its employees, including Plaintiffs Brown and Jackson. *Id.* ¶ 27. Defendant announced that Plaintiffs Brown and Jackson could continue working as emergency road service drivers if and only if each of them created a business association that would contract with Defendant. *Id.* ¶ 28. Plaintiff Brown created a business entity, 2 Browns LLC, which entered the contract proposed by Defendant on July 7, 2009. See *id.* ¶¶ 29-31. 2 Browns LLC renewed its contract with Defendant on July 18, 2011. These two contracts are attached to the complaint as Exhibits A and B. Plaintiff Jackson and another former employee of Defendant, Keith Boclair, created Boclair & Jackson Road Side Service Company in July 2009. *Id.* ¶ 33. After Defendant advised Plaintiff Jackson that it no longer wanted Boclair to act as a driver, and suggested that Plaintiff Jackson create his own company, Plaintiff Jackson

established Jackson 24-7 Road Service Inc. *Id.* ¶¶ 34-35. Jackson 24-7 Road Service contracted with Defendant. See *id.*¶ 35.

Plaintiffs Palmer, Rodgers, and Rodgers began their relationships with Defendant as "substitute drivers" for other drivers with business entities, like Plaintiffs Brown and Jackson. *Id.* ¶ 37. Plaintiffs Palmer, Rodgers, and Rodgers eventually established their own business associations that signed contracts with Defendant. *Id.* ¶ 40. Plaintiff Palmer created KDP Auto Repair and Emergency Road Side Service, LLC, *id.* ¶ 41; Plaintiff Keith Rodgers created Rapid Road Service, Inc., *id.* ¶ 42; and Plaintiff Kenith Rodgers created Rodgers Emergency Roadside Assistance, Inc. *Id.* ¶ 43.

Pursuant to the contracts with Defendant, which Plaintiffs assert were all "substantially the same form as the model attached as Exhibit A," *id.* ¶ 40, each Plaintiff's business entity, referred to in the contracts as an "SDC," agreed to render services for Defendant as an "independent contractor" or "independent subcontractor." *Id.* Ex. A. ¶¶ 2.4, 3.1. The contracts (at least the one attached as Exhibit A) also referred to the signing business entity as an "agent" of Defendant. *Id.* ¶ 6(c). Each business entity agreed that "its officers, employees, agents and contractors including its SDPs ["a person employed or engaged by the SDC and who holds a current Certificate of Competence"] are not officers, employees, agents or contractors of CA or AAA," *id.* ¶ 3.3(a), and that "there is no employment contract or any other contractual arrangement between [Defendant] and any SDP." *Id.* ¶ 12.8. The contracts expressly provided that SDCs were "not entitled to any benefits paid by CA to its employees, including, but not limited to vacation pay, holiday pay, profit sharing, health insurance, unemployment insurance and workers compensation." *Id.* ¶ 3.3(f). The contracts also included an Exhibit, pursuant to which Plaintiffs each acknowledged that they were employed by their respective business entities

and that they were "not an employee of either the Auto Club Group ('AAA') or Club Assist Road Service U.S., Inc. ('CA')," and agreed to "make no claims with regards to employment related matters against the AAA or CA." *Id.* Ex. A. Plaintiffs allege that these provisions are contrary to federal and state law. See [1] ¶ 64.

The contracts placed a number of restrictions on the signing business entities and their employees. See generally [1] ¶¶ 68-112. Each SDC was required to procure, maintain, and operate a "Delivery Vehicle" that was approved by Defendant, see *id.* Ex. A ¶ 10, and to "equip the Delivery Vehicle with the tools and other equipment detailed in Schedule C and with such tools and other equipment (including electronic banking and point of sale equipment) acceptable to, or from time to time specified by, CA." *Id.* ¶ 10.2(a). The contract required that each SDC "employ or otherwise engage a minimum of two (2) SDPs," [1] Ex. A ¶ 12.5, and "maintain a detailed report on the hours worked and Batteries delivered by each SDP and shall, when requested, provide such report to CA." *Id.* Ex. A ¶ 12.9. Each SDC further was required to ensure that its SDPs "undergo training provided by CA," *id.* ¶ 13.1, and "ensure that at all times the Services are only provided by an SDP," *id.* ¶ 13.3, who were to wear only uniforms approved by Defendant. *Id.* Sched. D. Each contracting SDC agreed to "provide a fully equipped and staffed Delivery Vehicle to which it has affixed the Decals ["signage prescribed by CA"] 24 hours per day, three hundred and sixty-five (365) days per year for provision of the Services unless otherwise directed by CA," *id.* ¶ 4.1, to sell accessories such as batteries at prices that have been set by CA, *id.* ¶ 6, and refrain from carrying on similar business in the contractually defined service area. *Id.* ¶ 24; see generally [1] ¶¶ 47-48. The contracts set forth a detailed "Procedure for Provision of Services." *Id.* Ex. A Sched. E.

In exchange for an SDC's provision of road services to Defendant as specified in the contracts, Defendant agreed to pay the contracting SDC on a per-job basis. [1] ¶ 52. Defendant agreed to pay $16.00 for each service call related to tires, batteries, fuel, and lock-outs. See *Id.* Ex. A Sched. B. The contracting SDCs – Plaintiffs' business entities – also were paid $16.00 if their SDPs arrived at a call but could not contact the caller, and $30.00 for each battery sale they completed. *Id.* The contract further provided for certain performance bonuses of up to $2 per call if the SDC satisfied specified performance metrics. See *id.*

Plaintiffs allege that Defendant "expects Plaintiffs to be on call for 17.5 hour shifts, seven days a week," [1] ¶ 54, and that to meet these expectations they "typically work or worked at least 85 hours per week." *Id.* ¶ 56. Plaintiffs contend that Defendant "paid or pays plaintiffs an amount that is less than the minimum wage required by federal and Illinois law," *id.* ¶ 59, and does not pay them overtime even though they work more than 40 hours per week. *Id.* ¶ 60. They assert that the contracts their SDCs have with Defendant "provide no rights to plaintiffs and fail to state the amount of plaintiffs' compensation." *Id.* ¶ 62.

Plaintiffs allege that Defendant has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207 (Count I), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4-5 (Count II), the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/9 (Count III), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (Count IV). Plaintiffs also contend that Defendant has been unjustly enriched (Count III). Plaintiffs seek to conditionally certify a national FLSA opt-in collective action, to certify under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) a national ERISA class, and to certify under Rule 23(b)(3) a class of individuals aggrieved under the IMWL and IWPCA. See [1] ¶¶ 125-47; [34]. Defendant has moved to dismiss and/or strike Plaintiffs' amended complaint [27].

Defendant contends that Plaintiffs lack standing, fail to state a claim upon which relief may be granted, and fail to join necessary and indispensable parties. See *id.* If Plaintiffs' complaint survives, Defendant seeks to strike Plaintiffs' jury demand as to Counts II, III, and IV, as well as the claim for punitive damages in Count II. Defendant opposes class and collective action certification. See [38-1].

## II. Discussion

### A. Motion To Dismiss Pursuant to Rules 12(b)(1) & 12(b)(6)

Defendant first contends that Plaintiffs lack standing to assert any of their claims because any injury they suffered is attributable to the SDCs – Plaintiffs' business entities – and not Defendant. Defendant argues: "Club Assist entered into Agreements with the SDCs. Those Agreements are silent on what, when, where and how the Plaintiffs are paid or the hours they must work, which is at the heart of Plaintiffs' claims against Club Assist. The SDCs determined what, when, where and how the Plaintiffs were paid, the Plaintiffs' schedule, and the number of hours each Plaintiff had to work. The Plaintiffs' alleged injuries, therefore, are attributable to the conduct of the SDCs (i.e. third parties) – not Club Assist. *Article III does not allow the Court to ignore the contracts that connect Plaintiffs' injuries to the conduct of the SDCs, and the facts contained therein destroy Plaintiffs' standing and the Court's subject matter jurisdiction.*" [28] at 3 (emphasis added and citations omitted). Defendant also challenges the sufficiency of the complaint under Federal Rule of Civil Procedure 12(b)(6). In connection with its motion to dismiss Plaintiffs' FLSA, IMWL, and IWPCA claims, Defendant similarly contends, in nearly verbatim language, that Plaintiff cannot state a claim because the contracts attached to the complaint demonstrate that the only relationships that exist here are between Defendant and the various SDCs. See [28] at 6 ("Because they fail to plead the existence of an agreement between

6

themselves and Club Assist, Plaintiffs' IWPCA claim fails."); *id.* at 7-8 ("In direct contravention of their other allegations and the clear language in the Agreements, Plaintiffs allege that they personally owed those obligations to Club Assist. The attachments to the Complaint, however, explicitly state that each of those duties was owed by the SDCs to Club Assist; not from the individual Plaintiffs to Club Assist. * * * *Since this Court cannot ignore the contracts that Plaintiffs attach to their Complaint and their own allegations that they are not bound by those contracts, the Court must dismiss Count I of the Complaint [FLSA] with prejudice pursuant to Rule 12(b)(6).*" (emphasis added and citations omitted)); *id.* at 8 ("Importantly and despite Plaintiffs' vacillating allegations, the SDCs and Plaintiffs are not the same and do not have the same rights and obligations. Consequently, this Court should dismiss Counts I and II [FLSA & IMWL] with prejudice.").

Where a defendant's jurisdictional arguments are distinct from its arguments for dismissal for failure to state a claim, the Court addresses the jurisdictional arguments first. See *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 967 n. 1 (7th Cir. 2013). Here, however, Defendant makes the same arguments under Rule 12(b)(1) as it does under Rule 12(b)(6), and the arguments are based exclusively on the allegations in Plaintiff's complaint and the contracts attached thereto. The Court therefore will treat Defendant's motion as if it were simply a motion to dismiss under Rule 12(b)(6). See *Peckman v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992) ("If a defendant's Rule 12(b)(1) motion is an indirect attack on the merits of the plaintiff's claim, the court may treat the motion as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted."); *Cavallaro v. UMass Mem'l Health Care, Inc.*, 2013 WL 360405, at *4-9 (D. Mass Jan. 28, 2013) (addressing defendants' FLSA standing arguments in context of Rule 12(b)(6) motion); *Beam v. Mukaskey*, 2008 WL 4614324, at *6 (N.D. Ill. Oct.

15, 2008) (addressing Rule 12(b)(1) and (6) motions together where the jurisdictional "injury-in-fact inquiry * * * blends into an inquiry into the merits of Plaintiffs' allegations, as the Plaintiffs have alleged [an injury-in-fact] only if they have alleged a violation of [a federal statute]."); *cf. Miller v. Herman*, 600 F.3d 726, 731-32 (7th Cir. 2010).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant is given "'fair notice of what the * * * claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Although "[s]pecific facts are not necessary [–] the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551

U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original) – "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks*, 578 F.3d at 581 (quoting *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

### 1. FLSA (Count I)

The FLSA requires that employers pay their employees a minimum hourly wage, 29 U.S.C. § 206(a), and one and one-half times their hourly wage for every hour worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Subject to certain exceptions not relevant here, an "employee" is defined enigmatically as "an individual employed by an employer." 29 U.S.C. § 203(e)(1); see *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (noting that this definition, which is identical to the one set forth in ERISA, "is completely circular and explains nothing"). (The FLSA's definition of "employed" is equally opaque: "'[e]mploy' includes to suffer or permit to work." 29 U.S.C. § 203(g).) These terms are "broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987); see also *Darden*, 503 U.S. at 326 (noting the "striking breadth" of the FLSA's definition and noting that it "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). When deciding

whether individuals are "employees" under the FLSA, courts examine whether the individuals "as a matter of economic reality are dependent upon the business to which they render service." *Laurtizen*, 835 F.2d at 1534. The Seventh Circuit has enumerated six factors for courts to use as a guide in making this assessment:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship; and
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1535; see also *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 565 (7th Cir. 2009) ("FLSA cases * * * are decided utilizing a broader definition of employee than the common law, and determine whether an arrangement is an employment or independent contractor relationship with a six-factor test to determine the 'economic reality' of the situation."). Neither the presence nor absence of any one factor is dispositive or controlling, however. *Lauritzen*, 835 F.2d at 1534. Despite the totality of the circumstances approach, the Seventh Circuit has held that whether a worker is an employee is a legal question. *Id.* at 1535.

Defendant's contention that the contracts alone preclude Plaintiffs from falling within the scope of the FLSA is at odds with this totality of circumstances/multi-factor approach. Indeed, both the Seventh Circuit, see *Estate of Suskovich*, 553 F.3d 559, and district courts within the circuit, see, *e.g.*, *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740 (N.D. Ill.

2011), have conducted the multi-factor analysis notwithstanding the existence of contracts purporting to define the relationship between plaintiffs and their alleged employers as one between independent contractors. The bottom line is that "status as an 'employee' for purposes of the FLSA depends on the totality of the circumstances rather than on any technical label." *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992). The Court therefore concludes that the contracts and any labels they contain are not dispositive here. See *Hefferman v. Ill. Cmty. Coll. Dist. No. 508*, 2000 WL 631309, at *2 (N.D. Ill. May 16, 2000) (denying motion to dismiss FLSA claim where defendant's sole argument was that plaintiff was an independent contractor because of the label affixed to an invoice).

The question then becomes whether Plaintiffs' complaint alleges facts sufficient to state a claim under the FLSA. See [28] at 9. The Court concludes that it does. Plaintiffs allege that their business entities are nothing more than pass-throughs set up to enable them to obtain work from Defendant. See [26] at ¶¶ 28-29. They allege that Defendant controlled many aspects of their day-to-day work, including their equipment, training, attire, fees, and availability. Plaintiffs also allege that they are unable to have any independent financial relationships with any customers of Defendant, see [26] ¶ 107, which fairly suggests that they had little or no opportunity to use their managerial skills to generate profit. Additionally, Plaintiffs allege that they perform the "*sole work that Club Assist does,*" *id.* ¶ 5, which speaks to the sixth factor of the test. While certain of the other factors might tilt the other way, such as the relatively temporary contractual nature of the parties' relationships and Plaintiffs' investment of their own funds and ability to hire their own employees, whether the final analysis goes to Plaintiffs or Defendant is a matter more appropriately resolved at summary judgment.

Plaintiffs' FLSA claim may proceed to that stage notwithstanding their failure to precisely allege the number of hours they worked and during which weeks they worked them. See [28] at 9-10. The Court recognizes that there is a split of authority as to the level of detail required to adequately plead an FLSA claim. See, *e.g.*, *Nicholson v. UTi Worldwide, Inc.*, 2010 WL 551551, at *2-3 (S.D. Ill. Feb. 12, 2012) (collecting cases). The cases on which Defendant relies, however, each had significantly more skeletal complaints than the one at issue here. In *Wilson v. Pioneer Concepts, Inc.*, No. 11-cv-2353, 2011 WL 3950892 (N.D. Ill. Sept. 1, 2011), the plaintiff's factual allegations consisted of three paragraphs in which she alleged that she was employed by Defendant "both in the past and presently," that on some occasions Plaintiff had to work during her lunch break, that "Defendant did not account for all the time worked based on time clock punches, but instead rounded the time to their benefit," and that "[i]n some instances [her] unpaid time should have been compensated at time and one-half the workers' regular hourly rates," while in others it "should have been compensated at the workers' regular hourly rates." See *Wilson*, No. 11-cv-2353, Dkt. 1. This Court agrees that these minimal allegations were insufficient to put the *Wilson* defendant on notice of the claims against it. The complaint in *Robertson v. Steamgard, LLC*, No. 11-cv-8571, 2012 WL 1232090 (N.D. Ill. Apr. 12, 2012), similarly was bereft of factual detail. And in *Butler v. East Lake Management Group, LLC*, No. 10-cv-6652, 2012 WL 2115518 (N.D. Ill. June 11, 2012), this Court dismissed plaintiff's FLSA claim primarily because his conclusory allegations failed to establish that his claim was brought within the time prescribed by the statute of limitations. Plaintiff Butler's factual allegations also were scant: "I was frequently called by cell phone * * * to work over time hours in excess of forty hours in a work week. I was entitled to compensation for work performed in excess of forty hours in a regular work week to a rate of one and a half times my regular hourly pay rate the

defendants did not compensate me for all the overtime worked on call. The defendants failure to pay all my over time worked in excess of forty hours per week violated the fair labor standards act 29 u.s.c. 207 et seq." *Butler*, No. 10-cv-6652, Dkt. 48. Plaintiffs here have pleaded significantly more detail. In addition to a multitude of allegations pertaining to Defendant's alleged control over their work, they allege that since July 2009, they have worked an average of 85 hours per week but have not been properly compensated for that time. As the court observed in *Victoria v. Alex Car, Inc.*, 2012 WL 1068759, at *5 (N.D. Ill. Mar. 29, 2012), "no rule of law * * * requires Plaintiffs to allege their hourly wage, the dates on which the alleged violations took place, or the specific facts they performed off the clock." FLSA claims generally and in this instance are fairly straightforward and do not require plaintiffs to plead infinitesimal details to render them plausible or provide defendants with fair notice of the claims against them. See *Nicholson*, 2010 WL 551551, at *4. Defendant's motion to dismiss this count is denied. Plaintiffs sufficiently have alleged that their injury is fairly traceable to Defendant and stated an FLSA claim. Plaintiffs' FLSA claim may move forward.

### 2. IMWL (Count II)

In Count II of their complaint, Plaintiffs allege that Defendant violated the IMWL by failing to pay them minimum wage, see 820 ILCS 105/4, and by failing to pay them overtime for time worked in excess of forty hours per week. See 820 ILCS 105/5. Like the FLSA, the IMWL applies only to "employers" and "employees." The IMWL defines an employer as "any individual, partnership, association, corporation, limited liability company, business trust, governmental or quasi-governmental body, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee * * * *" 820 ILCS 105/3(c). It defines an employee as "any individual permitted to work by an employer in an occupation, but

does not include any individual permitted to work * * * for an employer employing fewer than 4 employees exclusive of the employer's parent, spouse, or child or other members of his immediate family." *Id.* § 105/3(d).

The claims asserted in Count II are essentially the same as the claims that Plaintiffs asserted under the FLSA. The parties agree, at least for the purposes of the instant motion, that "[t]he same general analysis applies to Plaintiffs' claims under the FLSA and IMWL." [28] at 7; [30] at 4 & n .1. The Illinois Administrative Code specifically states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six-factor test for determining employee status that is virtually identical to the FLSA test. Ill. Admin. Code tit. 56, §§ 210.110, 210.120. Thus, for the same reasons stated above in connection with the analysis of the FLSA claims, the Court denies Defendant's motion to dismiss Plaintiffs' IMWL claims. *Cf. Jaworski v. Master Hand Contractors, Inc.*, 2013 WL 1283534, at *7 (N.D. Ill. Mar. 27, 2013) (granting summary judgment for defendant on IMWL claims "[b]ecause the plaintiffs are unable to establish that they were employees under the FLSA, they also fail to show that they are employees under the IMWL").

### 3. IWPCA (Count III)

In Count III, Plaintiffs allege that Defendant violated the IWPCA by taking improper deductions from their pay. See 820 ILCS 115/9. Defendant argues that Plaintiffs "have pled themselves out of court with respect to their claim against Club Assist under the IWPCA" because Plaintiffs concede that they are not parties to the contracts at issue in this case and the IWPCA requires that a claim for compensation be based on a "contract or agreement" between an employer and an employee. See [28] at 5-6. Plaintiffs respond that "they were, in reality, parties to unwritten employment agreements with Defendant and were paid accordingly." [30] at

12.  They also suggest that their IWPCA claim should rise and fall with their FLSA and IMWL

claims: "Plaintiffs['] theory of the case is that, despite what the written agreements attached to

the complaint say, they are actually Defendant's employees.  If Plaintiffs' theory prevails, then

the compensation that Club Assist paid them on a 'piece basis' constitutes wages for IWPCA

purposes." *Id.*

The IWPCA "allows for a cause of action based on compensation wrongfully withheld

pursuant to an employment contract or agreement." *Reid v. Neighborhood Assistance Corp. of

Am.*, 2013 WL 1087557, at *8 (N.D. Ill. Mar. 14, 2013) (quotation omitted). As the Seventh

Circuit has noted, Illinois courts have interpreted an "agreement" under the IWPCA to be

"broader than a contract and require[ ] only a manifestation of mutual assent on the part of two or

more persons  * * * without the formalities and accompanying legal protections of a contract."

*Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012) (quoting *Zabinsky v. Gelber Grp.,

Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 1st Dist. 2004)). Nonetheless, "for a person to state a

claim under the [IWPCA], he or she must plead that wages or final compensation is due to him

or her as an employee from an employer under an employment contract or agreement." *Landers-

Scelfo v. Corporate Office Sys., Inc.*, 827 N.E.2d 1051, 1058 (Ill. App. Ct. 2d Dist. 2005).

To plead the existence of an "agreement" or "contract," "a worker seeking to recover

under [the IWPCA] does not need to plead all contract elements if she can plead facts showing

mutual assent to terms that support the recovery." *Landers-Scelfo*, 827 N.E.2d at 1059.

"[E]mployers and employees can manifest their assent to conditions of employment by conduct

alone." *Id.*; see also 17 Ill. Law & Prac.: Employment § 10 (2006) ("[A]n employment

agreement need not be a formally negotiated contract. Generally, an employment agreement is

formed when one party promises to render service in exchange for the other party's promise to

pay wages."). Here, Plaintiffs allege that Defendant "announced that plaintiffs Brown and Jackson could continue in their positions as drivers if and only if each of them created a business association that would sign an agreement, in substantially the same form as the agreement attached hereto as Exhibit A, that gave Club Assist the same control over each plaintiff as it had when he was an employee, but falsely presented each of them as a driver for an independent contractor." [26] ¶ 28. They further allege that "plaintiffs Brown and Jackson agreed to set up this business association, which was intended by Club Assist to disguise the reality that plaintiffs continued as employees." *Id.* ¶ 29. These allegations, which the Court must at this stage accept as true, reasonably suggest that Defendant had an implicit "agreement" with at least Plaintiffs Brown and Jackson to continue to pay them if they continued to render services. There are no such allegations as to Plaintiffs Palmer, Rodgers, and Rodgers. The complaint alleges that those Plaintiffs formed business associations and "signed agreements in substantially the same form" as did Brown and Jackson, see *id.* ¶¶ 40-44, but there are no allegations that those three Plaintiffs themselves agreed with Defendants to perform services in exchange for compensation. Nonetheless, those Plaintiffs do plausibly allege that Defendant was their "employer" under both the FLSA and the IMWL. The Court thus finds it premature to dismiss their IWPCA claims at this time.[1]

### 4.    ERISA (Count IV)

In Count IV, Plaintiffs allege that they are Defendant's employees within the meaning of 29 U.S.C. § 1002(6) and therefore are eligible to receive coverage under the welfare benefit

---

[1] Plaintiffs also purport to assert a claim of unjust enrichment in Count III. See generally [26] ¶¶ 163-73. Defendant does not argue in its opening brief that this claim should be dismissed. See generally [28]. Defendant raises several arguments against the unjust enrichment claim in its reply brief, see [33] at 4-5, but the Court does not consider them because "[i]t is well settled that issues raised for the first time in a reply brief are deemed waived." *Nelson v. La Crosse Cnty. Dist. Attorney*, 301 F.3d 820, 836 (7th Cir. 2002). The unjust enrichment claim therefore survives at this time.

plans Defendant offers to its employees. They "seek to recover from Club Assist all benefits due to them under the various welfare benefit plans maintained by Club Assist for its employees, and to clarify their rights to future benefits under these same plans." [26] ¶ 180. Defendant does not contest Plaintiffs' assertion that their allegations place them within ERISA's definition of "employee." Instead, Defendant argues that Count IV should be dismissed "because Plaintiffs fail to plead that they exhausted their administrative remedies under the plan prior to filing suit." [28] at 11. Specifically, Defendant contends, "Plaintiffs fail to allege that they have made a claim for benefits under the Plan, that the Plan Administrator denied such a request, or that they used the administrative appeals process provided by the Plan." *Id.* at 12. Plaintiffs respond that any such efforts to avail themselves of the Plan's administrative remedies would have been futile because "Club Assist wrote their ineligibility for benefits into the very contracts that Club Assist believes govern their relationships with Plaintiff." [30] at 11. They point specifically to paragraph 3.3(f) of [26] Ex. A, which provides that "[b]ecause it is not an employee of CA, the SDC acknowledges that it is not entitled to any benefits paid by CA to its employees, including but not limited to vacation pay, holiday pay, profit sharing, health insurance, unemployment insurance and workers compensation."

Both parties' general statements of law are accurate as far as they go. The Seventh Circuit indeed has interpreted ERISA to require "exhaustion of administrative remedies as a prerequisite to bringing suit under the statute." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). The exhaustion requirement "serves several purposes," including reducing the number of frivolous ERISA suits, promoting the consistent treatment of claims for benefits, providing a nonadversarial method of claims settlement, minimizing costs, enhancing plan trustees' abilities to efficiently manage their funds, and preparing a robust factual record. See *id.*

at 360-61. Plaintiffs too are correct that "courts may excuse a failure to exhaust administrative remedies 'where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile.'" *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012) (quoting *Edwards*, 639 F.3d at 361)). Whether exhaustion is required in a particular case is a matter with the Court's discretion. *Edwards*, 639 F.3d at 361.

Although their general statements of the law are accurate, the parties' arguments regarding exhaustion are misplaced. The Court finds Plaintiffs' attempt to rely on the contracts that they otherwise seek to avoid or disregard somewhat incongruous. Likewise, Defendant's contention that Plaintiffs should have taken their disputes up with administrators of benefits plans in which they were allegedly precluded from participating misses the mark. When a plaintiff seeks to raise an ERISA claim for improper denial of benefits, he typically seeks relief against the benefits plan, its trustees, or its administrators after his claim for benefits was denied. Here, however, Plaintiffs claim that Defendant closed the door to the benefits plans in the first instance, not that the plan administrators misinterpreted the terms of the plan or otherwise denied coverage for specific incidents. To the extent that such suits have an exhaustion requirement, the Court finds that imposing one here would not serve any of the myriad purposes of the exhaustion requirement articulated by the Seventh Circuit. Moreover, the pursuit of internal plan remedies by Plaintiffs almost certainly would have been futile; not only do they lack the insurance cards and membership numbers necessary to navigate the administrative processes of insurance plans, but the plans (or plan administrators or trustees) would not be able to provide them the relief they seek – access to the plan in the first instance. Defendant's motion to dismiss this claim is denied.

### B.    Motion to Dismiss Pursuant to Rules 12(b)(7) & 19(a)

Defendant argues in the alternative that Plaintiffs' complaint should be dismissed pursuant to Rules 12(b)(7) and 19(a) because Plaintiffs failed to join necessary and indispensable parties: their respective SDCs.   The motion to dismiss is denied. Rule 19(a) does not countenance dismissal as a remedy for failure to join a party. See Fed. R. Civ. P. 19(a); *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 634-35 (7th Cir. 2011). Moreover, Defendant has not carried its burden of demonstrating that joinder of the SDCs would not be feasible and that for reasons of "equity and good conscience" the action should be dismissed. Fed. R. Civ. P. 19(b). To the extent that Defendant suggests for the first time in its reply brief that the "Court should order Plaintiffs to join the SDCs as defendants in this action immediately," [33] at 13, the Court denies this apparent (undeveloped and belated) Rule 19(a) motion without prejudice to a later refiling or the joinder of the SDCs via some other procedural vehicle.

### C.    Motion to Strike Jury Demand & Punitive Damages

#### 1.    Jury Demand

Plaintiffs have demanded a trial by jury "on all issues so triable." [26] at 24. Defendant contends that this demand should be stricken under Federal Rule of Civil Procedure 12(f) to the extent that it reaches Plaintiff's ERISA, IMWL, and IWPCA claims. See [28] at 14-15.   Rule 12(f) permits the Court in its discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f); see *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Plaintiffs' jury demand is not redundant, immaterial, impertinent, or scandalous and accordingly will not be stricken. Had Plaintiffs asked for a jury "on all issues," then the Court would agree with Defendants that the request was overbroad. But Plaintiffs carefully worded their request and in

any event rightly concede that there is no right to a jury trial on their ERISA claim. See *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 689 (7th Cir. 2010); *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 576 (7th Cir. 2007). The Court need not resolve at this juncture the parties' dispute concerning the right to jury trial on the IMWL and IWPCA claims, which presents complex questions of federal procedural law. See *Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010).

### 2.      Punitive Damages

In connection with their IMWL claim, Plaintiffs seek "punitive damages and penalties equal to 2 percent of the underpayments of minimum wage and overtime due to plaintiffs for each month following the date of any underpayment as authorized by Illinois law." [26] ¶ 162E. Defendant seeks to have the punitive damages demand stricken pursuant to Federal Rule of Civil Procedure 12(f) because the IMWL does not permit private litigants to seek punitive damages. See [28] at 15 (citing 820 ILCS 105/12(a)).

The IMWL provides that an employee "may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a). The Seventh Circuit has characterized the "damages of 2%" as "punitive," see *ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 477 (7th Cir. 2011), but Plaintiffs seek both the 2% damages *and* punitive damages. Their conjunctive request for "punitive damages" in addition to the statutory damages that have been characterized as punitive is unnecessary and duplicative. The Court concludes that Plaintiffs' request for punitive damages under the IMWL is redundant and impertinent and accordingly grants Defendant's motion to strike the demand.

**D.**      **Motion for Conditional Certification of a Collective Action[2]**

Plaintiffs have moved for conditional approval or certification of a federal collective action under the FLSA, 29 U.S.C. § 216(b), which "authorizes employees to act together to seek redress for violations of the statute's minimum wage and maximum hour provisions." *Ervin v. OS Restaurant Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Plaintiffs seek to certify two separate collective actions: one "on behalf of all persons who provide emergency road service on behalf of Club Assist anywhere within the United States who have entered contracts identical or similar to the contracts attached that falsely classify them as independent contractors instead of employees," [34] ¶ 71, and one "on behalf of all persons who provide emergency road service on behalf of Club Assist anywhere within the United States as 'substitute drivers' who Club Assist has falsely classified as employees not of Club Assist, but of its purported independent contractors." *Id.* ¶ 72.

"'[C]ertification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Hoffmann-La Roche*, 493 U.S. 165, 169, 174 (1989)); see also *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (same). "Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann-La Roche* has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Myers*, 624 F.3d at 555 n.10. Nonetheless, "[t]he conditional approval

---

[2] Plaintiffs have requested that the Court "reserve ruling on certification under Rule 23 until after discovery and full briefing." [44] at 2. The Court set the briefing schedule on Plaintiffs' combined motion for conditional certification of a collective action and for class certification [34] in accordance with this request, see [36], and the parties have fully briefed only the collective action issue. See [38-1], [44].

process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to participate in the collective action." *Ervin*, 632 F.3d at 974.

Courts generally take a two-step approach to conditional approval or certification of a federal collective action. See, *e.g.*, *Myers*, 624 F.3d at 554-55; *Hipp v. Nat'l Life Ins. Co.*, 252 F.2d 1208, 1218 (11th Cir. 2001). At the first step, the court makes an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. *Myers*, 624 F.3d at 555. Plaintiffs bear the burden of making a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008) (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)); see also *Bergman v. Kindred Healthcare, Inc.*, --- F. Supp. 2d ----, 2013 WL 2632596, at *3 (N.D. Ill. June 11, 2013).[3] "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,' but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citations omitted). It requires "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Zavala*, 691 F.3d at n.4 (quotation omitted); see also *Molina v. First Line Sol'ns LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) ("Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing."). This lenient standard occasionally is heightened if plaintiffs

---

[3] Some courts characterize the plaintiffs' burden as one of showing "a reasonable basis for his claim that there are other similarly situated employees." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

have been allowed extensive discovery, see *Bergman*, --- F. Supp. 2d at ----, 2013 WL 2632596, at *3, but the parties have not suggested that is the case here.

If Plaintiffs are able to satisfy their initial burden, notice may be issued to prospective plaintiffs who may opt in to the action. Then, when discovery is closed, the case moves to the second step. On the more robust record, the Court determines whether the so-called "collective action" may go forward by assessing "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555; see also *Bergman*, --- F. Supp. 2d at ----, 2013 WL 2632596, at *3 (explaining that at the second step, "the defendant is given an opportunity to move for decertification"). "At the second stage, the court considers (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to individually applied to each plaintiff; and (3) fairness and procedural concerns." *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012) (quotation omitted). This stage is where the certification becomes more akin to the familiar Rule 23 class certification standard, see *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); "it is not until the conclusion of the opt-in process and class discovery 'that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action.'" *Tamas v. Family Video Movie Club, Inc.*, 2013 WL 4080649, at *3 (N.D. Ill. Aug. 13, 2013) (quoting *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010)).

Here, Plaintiffs have made the minimal "modest factual showing" sufficient to carry them past the first stage of the conditional certification process. Plaintiffs Brown, Jackson, and Kenith

Rodgers have submitted sworn declarations attesting to the degree of control that Defendant maintained over their work and averring that they are "never left with the equivalent of the Illinois or federal minimum wage, let alone with enough to cover overtime pay." [34-1] ¶ 42; [34-3] ¶ 39; [34-7] ¶ 32. They also have submitted a sworn declaration from Rushdi Rashid, an emergency road service driver who has worked with Defendant in both Cleveland, Ohio, and Pittsburgh, Pennsylvania, containing substantially similar testimony. See [34-6]. Plaintiffs' theory is that Defendant used a form contract to dictate the terms of its relationship with all of its drivers, and that under the terms of the form contract Defendant should be considered an "employer" for purposes of the FLSA and all the drivers governed by the form contract should be considered "employees" for purposes of the FLSA. See [44] at 5. Plaintiffs have provided copies of the form contract signed by Plaintiff Brown's SDC, [34-2], Plaintiff Jackson's SDC, [34-4], and Plaintiff Kenith Rodgers's SDC, [34-8]. These contracts are substantially similar to one another and also to the unsigned contract purportedly governing Rashid's and other Pittsburgh drivers' relationship with Defendant. See [34-6]. Accordingly, the Court concludes that Plaintiffs have met their burden of demonstrating that they and others were subject to a common policy or course of conduct by Defendant.

The Court cannot at this stage of the litigation adopt Defendant's argument that individualized inquiries are necessary to determine whether each putative opt-in plaintiff was properly classified as an "independent contractor." Although this argument may prove to have merit, it is more appropriately made at the second stage of the FLSA class certification inquiry. *Tamas*, 2013 WL 4080649, at *4. Likewise, Defendant's evidence that its relationship with some of its drivers differed in character from those alleged by Plaintiffs cannot at this stage serve to

refute Plaintiffs' modest showing. See *Bergman*, --- F. Supp. 2d at ----, 2013 WL 2632596, at *4. Defendants will have the opportunity to seek decertification at the appropriate juncture.

The Court finds troubling, however, Plaintiffs' simultaneous allegations that they "did not enter any agreement with Club Assist on [their] own behalf," [26] ¶ 117, and that their "business associations entered the contract," *id.* ¶ 115, and their request that the Court approve notice to "all persons who provide emergency road service on behalf of Club Assist anywhere within the United States *who have entered contracts* identical or similar to the contracts attached that falsely classify them as independent contractors instead of employees." [34] ¶ 71 (emphasis added). Plaintiffs' proposed notice [34-9] reconciles these seemingly inconsistent representations, inviting all "current or former driver[s] for Club Assist who [have] worked at any time from February 12, 2010, through and including the present, and * * * believe that, some time on or after February 12, 2010, [they] were not paid for some or all of the hours [they] worked" to join the suit. [34-9] at 1.

Defendant's briefing indicates that it may have some objections to the "proposed form, content, process or timing of the notice." [38-1] at 25. The Court notes that Defendant did not expound upon any of these concerns in its briefing, notwithstanding the Court's grant of leave to file an oversized brief. In any event, both sides have indicated that they are amenable to engaging in a meet and confer to discuss any issues related to the notice. See [38-1] at 25; [44] at 15. The Court directs them to do so and sets this matter for status on October 31, 2013. Prior to the status, the parties are directed to file a joint status report, either agreed or setting forth the parties' respective positions, as to the form and contents of the notice.

**III.    Conclusion**

For the foregoing reasons, the Court denies the motion to dismiss and grants in part and denies in part the motion to strike [27]. The Court grants in part the motion for conditional certification of a collection action [34]. This matter is set for status at 9:00 a.m. on October 31, 2013. Parties are to submit a status report no later than three days prior to the status.

Dated: September 19, 2013

_____
Robert M. Dow, Jr.
United States District Judge